UNION PACIFIC RAILROAD COMPANY, Plaintiff-Appellee,

v.

The AMERICAN SILICA-SAND COMPANY, Defendant-Appellant.

No. 11896.

United States Court of Appeals Seventh Circuit.

April 24, 1957.

Rehearing Denied May 22, 1957.

---

Albert E. Hallett, Chicago, Ill., R. C. Bannister, Chicago, Ill., Dallstream, Schiff, Hardin, Waite & Dorschel, Chicago, Ill., of counsel, for appellant.

James W. Kissel, Chicago, Ill., Kenneth F. Burgess, Darwin E. Smith, Chicago, Ill., Sidley, Austin, Burgess & Smith, Chicago, Ill., of counsel, for appellee.

Before FINNEGAN, LINDLEY and SCHNACKENBERG, Circuit Judges.

FINNEGAN, Circuit Judge.

An agreed statement of facts underlies the appealed judgment order allowing plaintiff-carrier, Union Pacific Railroad Company, recovery of $408.20 from the defendant-shipper, the American Silica-Sand Company. Its motion for a new trial being denied, defendant also seeks review of that adverse order. Plaintiff brought this action to recover freight charges from the defendant-shipper and the issues were tried without a jury. The amount of judgment allowed plaintiff represents the published tariff rate from Utica, Illinois to Denver applied to the full tonnage of sand originally shipped at point of origin. The salient and stipulated facts follow.

On May 3, 1953, defendant applied to the Chicago Rock Island & Pacific Railroad Company for an empty car, to be loaded with dry crude silica sand. Defendant requested in writing that the car furnished for this shipment be an open top gondola car. Such a car was furnished defendant in accordance with defendant's written request, and used for the shipment in question. The lawfully published tariffs applicable to such shipments provided a rate for shipment of this commodity in open top gondola cars and also a rate for shipment in covered gondola cars. The applicable rate for such shipments in open gondola cars is lower than the rate for shipments in covered gondola cars. On May 4, 1953, defendant, under a bill of lading attached to the complaint filed herein as Exhibit B and made a part hereof by reference, shipped said car "Collect", loaded with approximately 146,300 pounds of dry crude silica sand to Western Foundry Company of Denver, Colorado, and specified Chicago, Rock Island & Pacific Railroad Company and Union Pacific Railroad Company routing. Defendant gave no other written directions or instructions relative to the care or handling of said shipment other than those appearing upon said Exhibit A and Exhibit B.

The car was transported to Denver, Colorado by C. R. I. & P. Railroad Company and by plaintiff, as connecting carriers. Plaintiff tendered delivery of said car to consignee. Upon delivery and tender of said car to consignee, the consignee refused to accept said car and its contents. Defendant received notice of this fact from plaintiff and defendant also refused and abandoned said car. On May 25, 1953, plaintiff sold the contents

of said car for freight and demurrage charges and realized from said sale $84.00 plus $2.52 tax, a total of $86.52. The freight, demurrage and tax charges applicable to the shipment were: Freight—$438.31; Demurrage—5/11 to 5/25/53—$42.00; Federal Tax—$14.41; Total—$494.72.

It is common practice to ship sand of this type in open gondola cars. In the year preceding May 4, 1953, approximately two-thirds of the shipments of such sand made by defendant were in open gondola cars and approximately one-third of the shipments of such sand made by defendant were in covered gondola cars. Plaintiff and its connecting carrier accepted this shipment as tendered for transportation to Denver, Colorado. While the car was in transit between Illinois and Colorado, tornadoes and winds of unusually high velocity were prevalent in the area traversed by this shipment. The winds of unusually high velocity and tornadoes caused part of the sand to be blown out of the open car and caused the remaining portion of the sand to become mixed with cinders and other foreign material. When the car arrived at destination, between one-third and one-half of the sand remained, the rest having been blown away en route.

From those facts and the exhibits the district judge found, and concluded, *inter alia:*

"2. The shipment was made in an open top gondola freight car. This type of car, with the open top, was specifically requested in writing by the shipper.

"3. Gondola freight cars with a covered top are available for this type of shipment and at times are used by this shipper. Such covered cars are more expensive to use because the freight rates are higher and unloading requires more time.

"4. In this instance, the shipper apparently selected the open type car in an effort to make the shipment in as cheap a manner as possible.

"5. Part of the contents of the car were lost en route through an Act of God when tornadoes struck the area and blew one-third to one-half of the sand out of the open car.

"6. The open top car, with a substantial part of the shipment remaining, was carried to Denver by the railroad and delivery tendered to consignee.

"7. When the consignee refused to accept the shipment, the sand was sold on the open market.

"8. The loss of part of the shipment would not have occurred, if the shipper had used a covered car instead of the cheaper open car.

"The Court concludes as a matter of law:

"1. This is a case of actual controversy, and the Court has jurisdiction of the subject matter and the parties.

"2. The carrier transported an open top freight car and a substantial portion of the contents of such car from Utica, Illinois to Denver, Colorado and is entitled to be paid its legal freight charges.

"3. The loss resulted from a tornado, which must be considered an Act of God. Under the specific contract of carriage entered into herein between the shipper and the carrier, and under all authority, the risk of a loss resulting from an Act of God is on the shipper.

"4. The shipper in this case was not misled nor deceived by the carrier in any manner concerning the type of car used for the shipment in question. Instead, the shipper exercised its own judgment and selected the open top car. Under such circumstances, if a loss occurred because of the type of car selected, as occurred in this case, then the shipper must bear such loss."

Defendant, in its opening brief, "admits that the carrier is not liable for the value of the shipment and has made no claim therefor." By its answer the shipper resisted the carrier's claim for freight charges on the theory of failure of consideration—incomplete delivery and spoilage. The choice of shipping sand in an open gondola car was made by the shipper and, when the venture was unsuccessful it refused to accept the car

and the sand remaining in it. Without question the carrier accepted the open car shipment and issued a bill of lading upon it. The shipper, narrowing the question, would place this appeal primarily on non-performance of the haulage contract stating in its brief: "Defendant has at all times recognized that this carrier is not responsible for the loss of these goods and has not sought to recover for them, either by claim or counterclaim." In short, the shipper suggests that when sued by the carrier for freight charges, non-liability for loss of the sand cargo is irrelevant; leaving the problem one of whether the carrier performed according to the terms of the contract between plaintiff and defendant. According to plaintiff's theory this carrier could only earn its freight charges by moving 146,-300 pounds of dry silica sand in an open top gondola car from point of departure to point of destination. But the bill of loading contains this clause:

"Sec. 1 * * * (b) No carrier or party in possession of all or any of the property herein described shall be liable for any loss thereof or damage thereto or delay caused by the Act of God, the public enemy, the authority of law, or the act or default of the shipper or owner, or for natural shrinkage. The carrier's liability shall be that of warehouseman only, for loss, damage, or delay caused by fire, occurring after the expiration of the free time allowed by tariffs lawfully on file. * * * Except in case of negligence of the carrier or party in possession (and the burden to prove freedom from such negligence shall be on the carrier or party in possession), the carrier or party in possession shall not be liable for loss, damage, or delay occurring while the property is stopped and held in transit upon the request of the shipper, owner, or party entitled to make such request, or resulting from a defect or vice in the property * * *."

That is an integral part of the contract between the parties. From the agreed facts it is clear that plaintiff is an experienced shipper of sand who has used both open and covered gondola cars in the past. The risk, we think, would be clear to defendant who is bound to know the terms in the uniform straight bill of lading. Under the agreed facts overturning the findings made below is unwarranted. Federal Rules Civil Procedure, Rule 52, 28 U.S.C., United States v. United States Gypsum Co., 1947, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746. Federal statutory provisions [e. g., Hepburn Act, 49 U.S.C.A. § 3(2) and § 6(7) ] leave the carrier without choice or alternative once the shipper selects the style of car, and we cannot underwrite the shipper's gamble by disallowing freight charges when "tornadoes and winds of unusually high velocity" blow dry sand away.

Our disposition of this appeal is reached after full consideration of all points pressed on us by the parties, but it is unnecessary, in our opinion, to mention each one of them, for the judgment appealed must be affirmed.

Judgment affirmed.